Ethan Jacobs (SBN 291838)
Ethan Jacobs Law Corporation
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 275-0845
ethan@ejacobslaw.com

Attorneys for Plaintiff
Facilitate Corporation Pte Ltd

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Facilitate Corporation Pte Ltd,<br><br>　　　　Plaintiff,<br>　　v.<br><br>Twitter, Inc. and X Corp., Inc.,<br><br>　　　　Defendants. | Case No.: 3:23-cv-3242<br><br>**COMPLAINT FOR BREACH OF CONTRACT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Facilitate Corporation Pte Ltd ("Facilitate") asserts the following claims against Defendants Twitter, Inc. and X Corp., Inc. ("Twitter" or "Defendants").

## NATURE OF ACTION

1. This is an action for breach of contract arising out of Twitter's failure to pay Facilitate's invoices after Elon Musk purchased Twitter in a leveraged buyout in late October 2022.

## JURISDICTION AND VENUE

1. Plaintiff is a corporation organized under the laws of Singapore, with its principal place of business in Sydney, Australia.

2. Defendant Twitter, Inc. is or was a corporation incorporated under the laws of Delaware, with its principal place of business in San Francisco, California.

3. Defendant X Corp., Inc. is a corporation incorporated under the laws of Nevada, with its principal place of business in San Francisco, California. Upon information and belief, X Corp.,

Inc. is the successor in interest to Twitter, Inc. and Twitter was merged into X Corp. earlier this year.

4. The amount in controversy exceeds $75,000 exclusive of fees and costs. Accordingly, this Court has diversity jurisdiction under 28 U.S.C. § 1332.

5. Twitter is subject to personal jurisdiction in this Judicial District because its principal place of business is within this District and State and because it consented to personal jurisdiction in this District in "[a]ny legal action or proceeding arising under" the March 1, 2021 Master Services Agreement that gives rise to this lawsuit (the "MSA").

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because a substantial part of the acts, events, and omissions giving rise to Plaintiff's claims occurred in this judicial district and because Plaintiff and Defendants consented to venue in this District in "[a]ny legal action or proceeding arising under" the MSA.

## DIVISIONAL ASSIGNMENT

7. A substantial part of the events and omissions that gave rise to the claims in the Complaint—the breach of contract, failure to pay on an account stated, and failure to pay on an open book account—occurred in San Francisco county, and accordingly assignment to the San Francisco Division is warranted.

## THE PARTIES

8. Plaintiff Facilitate Corporation Pte Ltd ("Facilitate") is company that helps build office spaces with offices in Sydney, Singapore, San Francisco, and London.

9. Twitter, Inc. ("Twitter") is a social media company based in San Francisco, California.

10. On information and belief, Defendant X Corp., Inc. is Twitter's successor in interest and now operates the Twitter social media app and website.

## COMMON FACTUAL ALLEGATIONS

**A.  2015-2022: The Facilitate-Twitter Relationship**

11. In 2015, Twitter hired Facilitate to help build out and develop its office spaces in several non-U.S. locations. Facilitate performed work for Twitter at multiple non-U.S. locations to Twitter's satisfaction and Twitter paid its invoices.

12. More recently, on March 1, 2021, Facilitate and Twitter entered into a Master Services Agreement that sets out their agreement (the "MSA"). Twitter included the word "Confidential" in the footer of the MSA, which includes does not otherwise specify that the MSA must be kept confidential, and so in an abundance of caution Facilitate does not attach the MSA as an exhibit to the complaint at this time.

13. Facilitate provided services to Twitter for its offices in London, Dublin, Singapore, and Sydney.

14. During the year Facilitate worked with Twitter, Twitter never complained about Facilitate's work or disputed an invoice.

**B. 2022: Elon Musk Purchases Twitter, Fires Half the Employees, Destroys its Revenue Stream, and Stops Paying Creditors.**

15. In April 2022, multi-billionaire Elon Musk offered to purchase Twitter for $54.20 per share. Musk was motivated in part by his belief that Twitter's content moderation decisions were hostile to political views of the far right in the United States. On information and belief, the offer price ended with "420" as an allusion to the slang term for cannabis, one of Mr. Musk's hobbies.

16. Soon after Twitter accepted his offer, Musk changed his mind and attempted to back out of his offer, prompting Twitter to sue him in Delaware. Faced with the impossibility of escaping his promises, Musk relented on the eve of his deposition and agreed to purchase Twitter on the terms in his agreement.

17. Musk concluded the purchase of Twitter on October 27, 2022.

18. Musk-owned Twitter immediately laid off half the company's employees and is reportedly refusing to pay their full severance. It also forced out hundreds more after they refused to sign loyalty oaths that would have required them to agree to a "hardcore" work environment. And it fired the executive team that had forced him to close on his purchase of Twitter, including most of the senior legal team.

19. At the same time, Musk became personally involved in Twitter's moderation decisions. On information and belief, Musk was directly involved in the decisions to ban accounts of users who criticized him and to reinstate other accounts, including those of former president Donald

Trump, who was banned after using Twitter to incite a mob to attack the U.S. Capitol; and Andrew Anglin, a notorious neo-Nazi.

20. The effect of these moderation decisions was to alienate the advertisers who accounted for the bulk of Twitter's revenues, throwing the company into instant financial crisis.

21. On information and belief, Twitter responded with a campaign of extreme belt-tightening that amounted to requiring nearly everyone to whom it owes money to sue.

22. On information and belief, Twitter stopped paying rent on some of its offices and stopped paying several vendors whose services it was still using.

23. Twitter also cancelled many contracts and stopped paying people to whom it owes money.

**C. 2023: Musk-owned Twitter Ignores Facilitate's Outstanding Invoices**

24. Between early 2022 and early 2023, Facilitate provided services to Twitter in London and Dublin—primarily for sensor installation; Singapore—for a full office fit-out construction; and Australia—primarily for decommissioning an office and temporarily storing its contents. And Facilitate submitted invoices for those services to Twitter.

25. Facilitate's unpaid invoices for its work for Twitter in Singapore are as follows, with the unpaid balances in Singapore dollars (SGD):

| **Invoice No.** | **Date Issued** | **Amount (SGD)** |
|---|---|---|
| 311 | 10/28/22 | $3,317.00 |
| 319 | 11/17/22 | $55,523.13 |
| 320 | 11/17/22 | $357,194.84 |
| 321 | 11/17/22 | $89,168.95 |
| 322 | 11/17/22 | $10,169.28 |
| 327 | 11/30/22 | $16,050.00 |
| 335 | 12/27/22 | $15,173.35 |
|  | **Total:** | $546,596.55 |

26. Facilitate's unpaid invoices for its work for Twitter in London and Dublin are as follows, with the unpaid balances in British pounds (GBP):

| Invoice No. | Date Issued | Amount (GBP) |
|---|---|---|
| 193 | 6/17/22 | £15,961.50 |
| 205 | 7/11/22 | £7,980.75 |
| 235 | 9/7/22 | £9,577.20 |
| 262 | 10/1/22 | £169,596.17 |
|  | Total: | £203,115.62 |

27. Facilitate's unpaid invoices for its work for Twitter in Australia are as follows, with the unpaid balances in Australian dollars (AUD):

| Invoice No. | Date Issued | Amount (AUD) |
|---|---|---|
| 1754 | 9/21/22 | $50,648.40 |
| 1919 | 3/2/23 | $8,195.00 |
| 1934 | 3/15/23 | $2,475.00 |
|  | Total: | $61,318.40 |

28. Facilitate provided all the services for which it invoiced Twitter and did not receive any complaints.

29. Following the acquisition, Facilitate corresponded about its outstanding invoices with its remaining contacts at the company. They gave no indication that Twitter disputed it owed the amounts on the invoices and offered no justification for not paying.

30. Section 4.1 of the MSA makes payment due within 60 days of Twitter's receipt of an invoice.

## FIRST CAUSE OF ACTION

**(Breach of Written Contract)**

31. Facilitate hereby re-alleges the allegations set forth in the paragraphs above.

32. Facilitate and Twitter entered into the MSA under which Facilitate agreed to provide services to Twitter and Twitter agreed to pay for those services within 60 days of Facilitate submitting them.

33. Facilitate did all, or substantially all, of the significant things that the MSA required it to do or was excused from having to do those things.

34. Twitter breached the MSA by failing to pay Facilitate's invoices on or before 60 days after Facilitate submitted them.

35. As a direct and proximate result of Twitter's breach of contract, Facilitate has suffered damages.

WHEREFORE, Facilitate seeks judgment as set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Facilitate demands judgment on this Complaint and an award of monetary relief against Twitter as follows:

1. compensatory damages in an amount to be determined at trial;
2. costs of suit;
3. awardable pre- and post-judgment interest at the maximum legal rate; and
4. entry of an Order for any further relief as the Court may deem just and proper.

Dated: June 29, 2023          ETHAN JACOBS LAW CORPORATION

By:   /s/ Ethan Jacobs
ETHAN JACOBS
Attorneys for Plaintiff
Facilitate Group LLC

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury in this action on any issue triable of right by a jury.

Dated: June 29, 2023                    ETHAN JACOBS LAW CORPORATION


By:    /s/ Ethan Jacobs
       ETHAN JACOBS
       Attorneys for Plaintiff
       Facilitate Group LLC